**UNITED STATES of America,
Appellee,**

v.

**Nathaniel BROWN, Appellant.**

**No. 19376.**

United States Court of Appeals
Eighth Circuit.

June 16, 1969.

William B. Kelleher, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Nathaniel Brown appeals from a judgment of conviction entered in the United States District Court for the Eastern District of Missouri where a jury found him guilty of violation of 18 U.S.C. § 2113 (a).[1] Brown received a sentence of eight years imprisonment.

---

1. 18 U.S.C. § 2113 reads in relevant part:
   "(a)  Whoever, by force and violence, *or by intimidation*, takes, or *attempts to take, from the person* or presence of another any property or money or any other thing of value belonging to, or in

Viewing the evidence in the light most favorable to the verdict, Brown, on April 4, 1966, entered the premises of Conservative Federal Savings & Loan Association at the southwest corner of Ninth and Olive Streets, St. Louis, Missouri, approached the window of teller Marcella Simmons and passed a note over the counter to her which read: "This is a Hode [sic] up. If you say a word I will kill you." Miss Simmons dropped the note to the floor in an attempt to attract the attention of a fellow teller Magdeline Schmiehausen, opened her cash drawer and pulled out some marked money. She whispered to Brown, "Show me your gun." Brown moved his right hand that was in his jacket pocket. Miss Simmons then screamed, "Show me your gun, you little snot, or get out of here." Brown left the premises empty-handed, having displayed no weapon at any time. Miss Simmons, Miss Schmiehausen, and a customer of the institution all identified Brown as the person involved in the aborted robbery attempt. Further, a fingerprint examiner testified that a print found on the note corresponded with the left thumb print of Brown.[2] Brown denied the attempted robbery and offered an uncorroborated alibi. The factual matters were all resolved by the jury adversely to Brown.

On appeal Brown raises one basic issue: The District Court erred in overruling his motion for dismissal since the government failed to establish the crime charged as there was no evidence upon which the jury could find that anyone was intimidated or put in fear of bodily harm. As a corollary claim of error, Brown contends that the District Court should have sustained an objection and sustained a motion for a mistrial when government counsel stated in closing argument that Miss Simmons was intimidated in that this argument assumed the ultimate issue to be determined by the jury.

■ The indictment was cast under the second paragraph of § 2113(a) and charged Brown with entering the financial institution with intent to commit a felony. The Court's charge was responsive to the first paragraph of § 2113(a) and placed on the government the burden of proving that intimidation was used in the attempted robbery of the financial institution. The overt act of demanding money accompanied by a threatening gesture of any type intended to intimidate could reasonably be viewed as either evidence of the attempted robbery itself, or as evidence of the perpetrator's intent to commit a felony. The party accosted or threatened does not have to be put in fear of his life, only intimidation need be shown along with a demand for funds to satisfy the first paragraph of § 2113(a), and any evidence showing an entry with intent to commit a felony satisfies the requirements for conviction under the second paragraph of § 2113(a)—the intimidating note is evidence of the would-be robber's intent.

■ We believe that the evidence adduced by the government establishes that

the care, custody, control, management, or *possession of,* any bank, or *any savings and loan association;* or

"Whoever enters or attempts to enter any bank, or any savings and loan association, * * * *with intent to commit* in such bank, or *in such savings and loan association,* * * * *any felony affecting* such bank or *such savings and loan association* and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

 \* \* \* \* \*

"(g) As used in this section the term 'savings and loan association' means any Federal savings and loan association and any savings and loan association the accounts of which are insured by the Federal Savings and Loan Insurance Corporation." (Emphasis supplied.)

2. Although the offense took place in April 1966, Brown was not a suspect until March 1967 when he was linked to the crime by the thumbprint on the note. At that time Brown was serving a six-month sentence in the St. Louis Workhouse for conviction of possession of marijuana. Trial in this case was on March 25–26, 1968.

Brown was guilty of both crimes defined in 18 U.S.C. § 2113(a).[3] However, as stated in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), there was no congressional intent in enacting § 2113(a) in its present form to pyramid penalties, and

> " * * * the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated." 328 of 352 U.S., 406, 407 of 77 S.Ct.

We find the contentions raised by Brown are without merit and affirm the judgment of conviction. Similar arguments to those raised by Brown were raised by the defendant in United States v. Baker, 129 F.Supp. 684 (S.D.Cal.1955). In *Baker*, the defendant passed a note to the teller which read: "Please check all, into this sack. Thank you E C B." The teller asked, "What is this?" The defendant said, "Just put everything you have in the sack and there won't be any trouble." The teller tripped an alarm and the defendant was apprehended. No weapon had been displayed, nor was one found on the defendant. The defendant argued that the facts could not support a charge of an attempt to take by intimidation. The Court said at 686–687 of 129 F. Supp.:

> "It is apparent that in the statute under consideration the 'attempt' re-
lates to the *taking* and not to the intimidation. Thus, what is involved in this indictment is an *attempted taking* by intimidation, the means being intimidation, or putting in fear instead of by force.

> * * * * * *

> "The handing of similar notes to bank tellers is a familiar *modus operandi* of both armed and unarmed bank robberies. * * *. The fact that this teller called for help instead of handing over money, keeps this case an attempt. The method used has often induced a bank teller to part with cash, for the circumstances do not admit of an examination to determine whether the man at the window is armed or not. The very presence of a man, having a note, who assures the teller, 'Do as I say, and there won't be any trouble', infers that failure to do as ordered is an invitation to trouble. Defendant intended to get money from the teller by intimidation. * * * That she did not respond as defendant expected, saves defendant from having committed the robbery he planned, but does not wipe out his overt acts wilfully done as an endeavor to do or perform and, hence, an attempt to commit, a bank robbery."

From the facts adduced in this case, the jury could justifiably find that the teller, Miss Simmons, was intimidated. The note that confronted Miss Simmons clearly stated that her life was in jeopardy if she did not comply with Brown's commands. The fact that she subsequently ascertained, apparently to her satisfaction, that Brown was not in possession of a weapon with which to readily carry out his threat, and the fact that she thwarted the robbery attempt by shouting at Brown, did not preclude as a matter of law the jury's finding that Miss Simmons was in fact intimidated

---

**3.** In prosecutions under § 2113(a), conviction of the lesser offense—entering an institution with intent to commit a felony —is merged in a conviction of the offenses defined in the first paragraph of that section—attempted or consummated robbery of an institution; consecutive sentences could not be imposed for violation of both the first and second paragraphs of § 2113 (a). Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

when presented with the threatening note.[4]

The abortive attempt made in this case was but a reflection of a common pattern followed by those desiring to commit a bank robbery. An oral or written demand for money accompanied with a threat of reprisal, blatant or subtle, is intended to enforce compliance by intimidation; and that intimidation accompanied by a demand for funds constitutes the crime.

In this case the note contained a threat to kill, which is intimidating to anyone not knowing for sure whether the party making the threat has means at his disposal to carry it out. True, parties do react differently and sometimes strangely to threatening demands, and under the impact of emotional stress caused by such threats often attempt to repel the threat by counteraction instead of submission. However, the reaction of the party threatened, even if it foils the robbery, does not wipe out the attempted robbery, nor does it expunge the initial crime of entering the financial institution with intent to commit a felony.

■ Since the facts also clearly show an entry with intent to commit a felony, Brown was not prejudiced by the government being required in the charge to furnish a greater quantum of proof under the first paragraph of § 2113(a) than is necessary under the second paragraph. The paragraphs are written in the alternative and a violation of either is sufficient for a conviction under § 2113(a). The proof here warrants a conviction under either paragraph.

4. The Court correctly instructed on the "intimidation" issue submitted in the charge. This part of the charge was taken from Mathes and Devitt, Federal Jury Practice and Instructions § 43.05, pp. 337–338 (1965):

"To take, or attempt to take, 'by intimidation' means willfully to take, or attempt to take, by putting in fear of bodily harm. Such fear must arise from the willful conduct of the accused, rather than from some mere tempermental timidity of the victim; however, the fear of the victim need not be so great as to result in terror, panic, or hysteria.

■ The corollary contention that the District Court erred in not declaring a mistrial when government counsel argued to the jury that the facts showed that Miss Simmons was intimidated, is frivolous. The Court in overruling the motion correctly stated:

"I think the attorneys are entitled to draw their inferences of what they show. This is merely argument to the jury. The jury understands, of course, they're bound exclusively by the testimony as it comes from the stand."

Judgment affirmed.

"A taking, or an attempted taking, 'by intimidation' must be established by proof of one or more acts or statements of the accused which were done or made, in such a way or manner, and under such circumstances, as would produce in the ordinary person fear of bodily harm.

"However, actual fear need not be proved. Fear, like intent may be inferred from statements made and acts done or omitted by the accused, and by the victim as well; and from all the surrounding circumstances shown by the evidence in the case."