**UNITED STATES of America,**
**Appellee,**

v.

**Thomas PICCINI, Appellant.**
**No. 512, Docket 32625.**

United States Court of Appeals
Second Circuit.

Argued April 15, 1969.

Decided June 27, 1969.

William Sonenshine, Evseroff, Newman & Sonenshine, Brooklyn, N. Y., for appellant.

Vincent T. McCarthy, U. S. Atty., Eastern District of New York (Louis R. Rosenthal, Asst. U. S. Atty., on the brief), for appellee.

Before WATERMAN, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The defendant, Thomas Piccini, was one of five codefendants [1] charged with knowingly and fraudulently concealing the assets of a bankrupt in violation of 18 U.S.C. §§ 152, 371. He was convicted on both the substantive and conspiracy counts after jury trial before Judge Weinstein in the United States District Court for the Eastern District of New York, and sentenced to three years in jail.

On appeal the defendant challenges the sufficiency of the evidence, as well as the admissibility of certain testimony given at trial by his former attorney. He also argues that the grand jury indictment was defective because it was based on statements allegedly inadmissible under section 7a(10) of the Bankruptcy Act, 11 U.S.C. § 25(a) (10). We find no error and affirm.

■ The evidence, even though largely circumstantial, was plainly sufficient. In April, 1962, Piccini invested in a New York corporation, Vanderbilt Candy and Tobacco Co., Inc. ("Vanderbilt"), a tobacco and candy distributor. Shortly thereafter Vanderbilt embarked on the classic course of bankruptcy fraud, greatly expanding its purchases on credit and selling at or below cost for cash or checks to cash which promptly disappeared, with Vanderbilt's involuntary bankruptcy following in due course.[2] As to Piccini's actual participation in the fraud scheme, the prosecution showed that Piccini had greatly exaggerated the amount of his investment in the company in order to inflate its capital stock and construct a favorable financial statement for credit purposes. Shortly after he joined Vanderbilt, the defendant brought a friend, Harold Surofsky, into the company as a salesman, and Surofsky promptly began disposing of large quantities of merchandise at sacrifice prices. There was also the unexplained disappearance of Vanderbilt's books and records, the nondeposit of checks and cash in Vanderbilt's bank account, and the spectacle of merchandise trucked away immediately upon delivery. The jury could also have found

---

1. Two of the co-defendants, DiBuono and Surofsky, were acquitted on all counts. The other two co-defendants, Brander and Monda, were convicted on the same counts as Piccini, and in addition Monda was convicted on a perjury count. Piccini, however, is the only co-defendant who elected to take an appeal.

2. Cf. Kaplan v. United States, 7 F.2d 594 (2d Cir.), cert. denied 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423 (1925).

that Piccini received some of the cash which the company had been unable to account for. Moreover, the participation of his two partners, Brander and Monda, in the scheme was fully established. The evidence was ample therefore on both the substantive and conspiracy counts.

■ The defendant urges next that the court erred in allowing Theodore Rosenberg, attorney for Vanderbilt, to testify that Piccini owed him money for past legal services, and that Piccini had instructed him to apply the proceeds of certain corporate claims in partial reduction of this personal indebtedness. Piccini insists that these statements were made in the attorney-client context and are therefore privileged. The instruction claimed to be privileged, however, was given by Piccini as an officer of the corporation, so that the privilege, if any, was that of the corporation, and may not be availed of by Piccini.[3]

■ The defendant's principal claim appears to be that his testimony in bankruptcy proceedings was privileged and that its use against him invalidates the conviction.[4] The testimony was not allowed in evidence at trial, but was before the grand jury. If the indictment were based solely on that testimony, it might be that we would have to determine whether the court abused its discretion in denying the motion to dismiss counts 1, 2, 3 and 4 and to decide whether the privilege extends to an officer of a bankrupt corporation who is subpoenaed to testify at the first meeting of creditors.[5]

We need not resolve this question, however, since the testimony given at the creditors' meeting was excluded from evidence at trial, and since the indictment returned by the grand jury was not based solely on the questioned testimony. Indeed, some thirty witnesses testified before the grand jury and detailed the situation portrayed on trial.[6] We will not upset a conviction founded on an indictment based on sufficient, legal and probative evidence because other evidence of doubtful admissibility was also before the grand jury. See Lawn v. United

---

3. See Gov't Ex. 66, a letter signed by Piccini for the corporation.

4. 11 U.S.C. § 25(a) (10) provides that: The bankrupt shall * * * at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; *but no testimony given by him shall be offered in evidence against him in any criminal proceedings, except such testimony as may be given by him in the hearing upon objections to his discharge* * * *. [Italics added.]

5. The competing considerations are set out in the majority and dissenting opinions in United States v. Castellana, 349 F.2d 264 (2d Cir. 1965). For the majority, Judge Kaufman stated that the section 7(a) (10) privilege applies only when the officer of a bankrupt corporation has been "designated by the [bankruptcy] court"

to perform the bankrupt's duties. "[A] meaningful distinction * * * should be drawn between the corporate officer who testifies voluntarily, and thus cannot claim the privilege, and the one who, having been *directed* to appear by the bankruptcy court, has thereby been 'designated by the court [to] perform the duties imposed upon the bankrupt by this title.'" *Id.* at 273. In his dissent, Judge Hays suggested that the privilege should not depend on "technical" concepts of corporate identity, since the purpose of section 7 (a) (10) was "to encourage corporate officers, directors and shareholders to testify freely and fully as to the prebankruptcy corporate activities." *Id.* at 278. Cf. United States v. Weissman, 219 F.2d 837, 841 (2d Cir. 1955), where Judge Learned Hand observed that the section 7(a) (10) privilege was "obviously for the purpose of insuring a full disclosure of the facts."

6. Court Exhibits 2, 3, 4, 5, 6, 7, 8 and 10, for instance, were part of the grand jury testimony, and see references to unquestioned testimony before the grand jury at R. 473ff, 591ff, 743, 747, 777, 814, 1234–9, 1523ff, 1628, 2281, 2478, 2523ff, 2590–1.

**594**

States, 355 U.S. 339, 349, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Holt v. United States, 218 U.S. 245, 247, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); United States v. Jordan, 399 F.2d 610, 615 (2d Cir. 1968); United States v. Tane, 329 F.2d 848, 853–854 (2d Cir. 1964).

Since the indictment was based on other sufficient competent evidence and the statements obtained in the bankruptcy proceedings were not admitted in evidence before the trial jury, we conclude that the conviction may stand. The judgment is affirmed.