UNITED STATES of America

v.

Andrew DE LILLO and William De Koning, Defendants.

No. 77 CR 401.

United States District Court, E. D. New York.

April 21, 1978.

David G. Trager, U. S. Atty., E. D. N. Y. by James Harmon, Brooklyn, N. Y. (Strike Force), for plaintiff.

Williams & Connolly, Washington, D. C., for defendant De Lillo.

Catterson & Nolan, Port Jefferson, N. Y., for defendant De Koning.

## MEMORANDUM DECISION

GEORGE C. PRATT, District Judge:

An attorney-witness has asserted the attorney-client privilege on behalf of his former client. The question presented is whether and to what extent either the witness, who is a former attorney for a union pension fund, or the defendant, who is a former trustee of the fund, may raise the attorney-client privilege to protect communications concerning the fund's business (a) between the attorney and the entire board of trustees of the fund, and (b) between the attorney and the defendant who, at the time of the communications, served as chairman and a member of the fund's board of trustees. Counsel have advanced arguments relating to policy, standing and waiver.

## POLICY

The attorney-client privilege is, of course, an important policy in the law. It is designed to encourage and protect the unimpeded flow of information between an attorney and his client when it pertains to legal advice that has been sought or given. The privilege itself, however, belongs to the client. In the relationship here the "client" may be viewed as the pension and retirement benefit fund, or possibly its board of trustees. Whichever view is taken, however, what is clear is that the "client" is not any individual trustee of the board.

The fund's board of trustees manages the assets under its control not for the board members, but for the fund's beneficiaries. An individual trustee would seem to have no proper personal interest in protecting against disclosure of communications which pertain to the fund's business. Were it necessary for a ruling here, the court would seriously consider the government's argument that sound public policy prohibits use of the attorney-client privilege in a criminal prosecution for a fraud perpetrated against the fund of which defendant was a trustee. Such an argument need not be resolved in this case, however, since the court has concluded on other grounds that the privilege does not here bar the testimony of the attorney-witness.

## STANDING

The government has argued that defendant, who is only a former trustee, has no standing now to claim a privilege which belongs to the fund or its board of trustees. True, an individual trustee may frequently in a representative capacity speak for the board, and thus at a trial be the agent through whom the attorney-client privilege may be asserted. But where, as here, the individual defendant is no longer a trustee, he no longer has standing to claim the attorney-client privilege for communications pertaining to the fund's business.

Lack of defendant's standing to assert the privilege does not end the dispute, however, since the attorney-witness has properly raised the privilege question with respect to his proposed testimony; indeed, he would be required to do so, even though he no longer represents the fund.

## WAIVER

The government also argues that the privilege has been waived, and in sup-

port it has presented to the court a letter dated September 23, 1977 addressed to the "Deputy United States Attorney" from the present counsel for the fund. The letter states that the present trustees have

> no objection to raise, and no privilege would prevent [the attorney-witness] from answering or otherwise cooperating in any way with your investigations concerning Colonie Hill, including the pending criminal proceedings against [the defendant].

I find and conclude that by its counsel's letter of September 23, 1977, whose authenticity and authorization have not been challenged, the fund and its board of trustees have waived their attorney-client privilege with respect to the communications in question. We have here a claim of privilege advanced in court by the former attorney, but met by a letter from the present attorneys indicating no desire on the part of the present board of trustees to assert the privilege. As to this type of conflict between attorneys, Judge Weinstein has commented that

> if the former and present attorneys differ in their view of the client's position, the current attorneys' position should be followed. 2 Weinstein on Evidence ¶ 503–56 & 57.

Such a proposition appears to be self evident, but does not quite meet defendant's argument concerning the nature of a board and its privilege.

The communications which will be the subject of the attorney's testimony were made some six years ago by a board of trustees made up of a group of eight individuals, only one of whom is still a board member. Does the privilege belong to the trustees as individuals, or as board members? A resolution of that conceptual problem may be found in the Supreme Court's Standard § 503(c), which, even though it was not accepted by Congress, may be regarded as a fairly authoritative source of the federal common law which governs in this situation. The proposed § 503(c) provided that the attorney-client privilege may be claimed by the "successor of a corporation, association or other organization whether or not in existence." By this language, the Supreme Court expressed the view that an organization such as a corporation or association is a continuing entity which might claim the attorney-client privilege even after it had legally ceased to exist. There is no logical or policy reason for treating a board of trustees any differently than a corporation or other similar organization. Moreover, if the privilege can be claimed even after formal legal existence ceases, the privilege could also be waived by the present board of trustees, even though its members were nearly all successors to those who were on the board at the time of the communications.

Finally, the court's own research has disclosed a decision by Judge Joiner of the Eastern District of Michigan in which a corporate vice president asserted a privilege before the grand jury as to communications between him and the corporation's attorney, after the corporation itself had waived any privilege. *In re Grand Jury Proceedings, Detroit Michigan, August, 1977*, 434 F.Supp. 648 (E.D.Mich.1977). The claimed privilege was rejected. Since Judge Joiner was one of the members of the advisory committee on the preparation of the Federal Rules of Evidence, his views are entitled to considerable weight; in any event, they are persuasive here. In the following quotation, which aptly states and solves the problem, the bracketed materials simply alter the corporate context of Judge Joiner's case to the trust context here.

> The concept of a representative of the client comes into the rule and is needed to permit an accurate consideration of how a [trust fund] communicates with a lawyer. Surely [defendant] was a representative of the client. Surely his communications with [the attorney-witness] were privileged, but the privilege was that of [the fund] under the traditional statement of the rule. . . .
>
> Should the privilege be extended to include among the protected the communicating [person]?

If the communicating [person] seeks legal advice himself and consults a lawyer about his problems, he may have a privilege. If he makes it clear when he is consulting the [fund's] lawyer that he personally is consulting the lawyer and the lawyer sees fit to accept and give communication knowing the possible conflicts that could arise, he may have a privilege. But in the absence of any indication to the [fund's] lawyer that the lawyer is to act in any other capacity than as lawyer for the [fund] in giving and receiving communications from [members of the board of trustees], the privilege is and should remain that of the [fund] and not that of the communicating [person].

Such a rule should not inhibit obtaining legal advice. The [trustee] is free to get legal advice about his problems at any time from any lawyer. Such a rule should tend to prevent inadvertent conflicts of interest from developing because to create the privilege in someone other than the [fund] it must be made clear to the lawyer that the intended client ([an individual member of the board of trustees]) is someone other than the [fund], and the lawyer at that time could choose whether to accept the communication on such terms. 434 F.Supp. at 650.*

Accordingly, since the attorney-client privilege has been waived by the fund through its present board of trustees, the attorney-witness may testify to communications concerning the business of the fund (a) between himself and the entire board of trustees of the fund and (b) between himself and the defendant who at the time of the communications served as chairman and a member of the board of trustees.

---

* After this ruling was rendered orally at the trial, the Sixth Circuit Court of Appeals affirmed the decision on the basis of Judge Joiner's opinion below. 570 F.2d 562 (1978).