**In re NATIONAL TRADE CORPORATION, Debtor.**

**Appeal of Myron CHERRY, Peter Flynn and Arnold Kanter.**

**No. 83 C 3596.**

United States District Court, N.D. Illinois, E.D.

June 15, 1987.

James P. Chapman, Matthew J. Piers, Lauren S. Rosenthal, John Gubbins, Freeman, Atkins & Coleman, Ltd., Chicago, Ill., for plaintiff.

Richard Alexander, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This case is now before the court on two motions by National Trade Corporation's

(NTC) trustee for clarification of the court's Memorandum Opinion and Order of February 27, 1985, and to compel former NTC attorneys Myron Cherry, Peter Flynn, and Arnold Kanter (appellants) to respond to the trustee's deposition questioning. During the course of Cherry's deposition, trustee's counsel questioned Cherry regarding his communications with former NTC president, Dongkyu Hong (Hong), and Hong's wife, Namjung Hong, concerning NTC business affairs. Cherry refused to answer claiming the communications were protected under the attorney-client privilege. As a result, the trustee brought the instant motions.

## I. *Discussion*

■ The Supreme Court has made clear that the trustee of a bankrupt corporation has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 1996, 85 L.Ed.2d 372 (1985). As NTC's trustee has waived NTC's attorney-client privilege, the waiver bars any assertion of the privilege by corporate officers for communications made in their corporate capacity.

■ A corporate officer may, however, assert a personal attorney-client privilege for communications he made to his own counsel concerning personal liability unrelated to the corporation or his role as a corporate officer. *See In re Bevill, Bresler, and Schulman*, 805 F.2d 120, 123 (3d Cir.1986); *In re Grand Jury Investigation No. 83-30557*, 575 F.Supp. 777, 780 (N.D. Ga.1983). Indeed, the court founded its earlier suggestion that discussions between Hong and appellants may be privileged upon this general rule. *See* Mem. Op. at 8.

■ Cherry, however, carries the burden of establishing the privilege. *Id.* Yet, he failed to present any evidence which demonstrates he, or his colleagues, ever served as the Hongs' counsel. To the contrary, when Cherry was asked whether he was ever retained to represent the Hongs he answered:

I don't believe so, but I believe they were officers of—I'm not sure of this—the National Trade Corporation and the Corporation acted through them. They had some involvement in it and we may have incidentally filed or done some work for them, but we were retained by the Corporation. But often in a case when you represent the corporation you act through people. They have some involvement with it. So I'm sure that I met Mr. Hong.

Deposition of Myron Cherry (Cherry Dep.) at 11–12.

Indeed, not only were Cherry, Flynn, and Kanter *not* the Hongs' counsel, but Cherry made clear that any work they did for the Hongs was incidental to appellants' representation of NTC. As a result, it was not protected by a personal attorney-client privilege.

Q: Well, what good results did you get for the Hongs?

A: My work was for National Trade Corporation. And as I recall, earlier you asked me about that and I may have in the process of representing National Trade done some incidental work for the Hongs, but I have no specific recollection and, therefore, I can't answer your questions.

\* \* \* \* \* \*

My recollection is that most, if not all of our work, was for National Trade Corporation, and that anything we did for the Hongs was incidental to what went on for National Trade Corporation. Now, I have said that to you a half a dozen times and I don't have anything further to answer.

Cherry Dep. at 38, 178.

Thus, the court finds appellants' assertion of the attorney client privilege is without merit. Indeed, given Cherry's repeated, unambiguous statements, appellants' claim of being "hounded into waiving the privilege that belongs to former clients" is simply incredible. Accordingly, the court's Memorandum Opinion and Order of February 27, 1985 is clarified to permit trustee's special counsel to inquire

into communications relating to NTC affairs which the Hongs had with appellants in their role as NTC officials. Moreover, appellants are specifically ordered to answer fully the series of questions previously propounded to Cherry, and all similar questions concerning appellants' communications with the Hongs regarding NTC affairs.

## II. *Conclusion*

National Trade Corporation's motions for clarification and to compel are granted.