68 F.3d 480
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re GRAND JURY SUBPOENA ISSUED TO Joseph P. POWERS.
Robert T. EDWARDS and R.T.E. Holdings, Inc., Petitioners-Appellants,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-56603.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1995.
Submission Deferred July 14, 1995, to July 21, 1995.
Decided Oct. 11, 1995.
 
 1
 Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Robert T. Edwards and R.T.E. Holdings, Inc. (collectively "Edwards") appeal from the orders of the district court denying Edwards' motion to intervene in the grand jury proceedings, to quash a grand jury subpoena issued to a third party and compelling that third party to comply with the subpoena. We have jurisdiction under the rule that a grand jury target may immediately appeal an order compelling a third party's compliance with a grand jury subpoena. E.g., In re Subpoena to Testify Before Grand Jury (Alexiou), 39 F.3d 973, 975 (9th Cir. 1994), cert. denied, 115 S.Ct. 1825 (1995). We affirm.
 
 I. FACTS
 
 4
 Edwards is the founder, past president and a former director of FundAmerica, Inc. ("FundAmerica"). The government is investigating Edwards' activities involving FundAmerica, as to whether Edwards illegally diverted funds to foreign accounts under a purported credit agreement between FundAmerica and Theta, Limited ("Theta").
 
 
 5
 The law firm of Baker & McKenzie represented FundAmerica in the FundAmerica-Theta transaction. In connection with its investigation, the government issued a subpoena to testify before the grand jury to Joseph P. Powers ("Powers"), the Baker & McKenzie attorney who assisted in drafting the credit agreement. Edwards sought to prevent Powers from complying with the subpoena on the ground that Edwards had an attorney-client relationship with Powers and that the latter's testimony would breach that privilege.
 
 II. STANDARD OF REVIEW
 
 6
 Whether an attorney-client privilege exists involves a mixed question of law and fact which we review de novo. In re Subpoena to Testify Before Grand Jury (Alexiou), 39 F.2d at 976. We review the district court's denial of a motion to quash a subpoena for abuse of discretion. In re Grand Jury Proceedings (Kinamon), 45 F.3d 343, 346 (9th Cir. 1995).
 
 III. DISCUSSION
 A. Attorney-Client Privilege
 
 7
 "The attorney-client privilege protects confidential communications between a client seeking legal advice and an attorney providing such advice." In re Grand Jury Subpoena 92-1 (SJ), 31 F.3d 826, 829 (9th Cir. 1994) (citation omitted). Thus, the person seeking to invoke the privilege must be a client or have affirmatively sought to become a client of the attorney from whom information is demanded. United States v. Layton, 855 F.2d 1388, 1406 (9th Cir. 1988), cert. denied, 489 U.S. 1046 (1989). Courts strictly construe the attorney-client privilege. United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990). The party asserting it carries the burden of establishing the existence and applicability of the privilege. Layton, 855 F.2d at 1406.
 
 
 8
 An employee of a corporation that holds an attorney-client privilege may not assert the corporation's privilege for personal protection where there is no express agreement for personal representation or where the employee has not requested such representation. Id. (citing United States v. Keplinger, 776 F.2d 678, 700 (7th Cir. 1985), cert. denied, 476 U.S. 1183 (1986)). If the employee does not manifest the seeking of representation, the lawyer does not have the opportunity to consider possible conflicts of interest before agreeing to represent the employee. Keplinger, 776 F.2d at 701 (citing In re Grand Jury Proceedings (Jackier), 434 F.Supp. 648, 650 (E.D.Mich. 1977), aff'd, 570 F.2d 562 (6th Cir. 1978)); see also In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 124 (3d Cir. 1986).
 
 
 9
 In Keplinger, the court rejected the defendants' argument that their subjective belief that the attorneys represented them individually was sufficient to create an attorney-client relationship. The court held that the defendants must have "manifested in [some] way their belief that they were being represented individually." 776 F.2d at 701. The court concluded that the defendants did not present sufficient evidence to support a finding that they sought individual legal advice or asked questions regarding personal representation. Id. Moreover, the attorneys with whom the defendants claimed a privileged relationship neither believed they represented the defendants individually nor believed the defendants thought they were represented. Id.
 
 
 10
 Similarly, Edwards admits that he "had little or no personal contact with the lawyers at Baker & McKenzie and did not directly discuss legal issues with them ...." (AOB at 7.) Further, Edwards does not cite any evidence in the record of any personal conversations or other communications between him and Powers regarding individual representation.
 
 
 11
 Edwards argues that he obtained representation through Steven Youngman ("Youngman"), a Canadian lawyer and accountant who represented Edwards and numerous Canadian corporations owned by or associated with Edwards. Edwards claims that Youngman sought legal advice from Powers on Edwards' behalf regarding the credit transaction. However, the record does not contain any evidence to support this assertion. Noticeably absent from the record is a declaration from Youngman that he sought personal representation on Edward's behalf from Baker & McKenzie or that he believed he was seeking such representation.
 
 
 12
 The record is also bare of any evidence that Baker & McKenzie had the opportunity to make a conscious decision of whether or not to represent Edwards. Powers states in his declaration that Baker & McKenzie did not represent Edwards and that his "understanding was and is that Baker & McKenzie represented only FundAmerica." (ER at 61, paragraphs3-4.) Powers acknowledges that he talked with Edwards regarding the FundAmerica-Theta credit agreement, but that "the conversations were that of attorney and corporate officer of client rather than attorney and client." (ER at 62, p8.)
 
 
 13
 Edwards contends that the words "Re Edwards" noted on Baker & McKenzie's billing statements evidence an individual attorney-client relationship. He also argues that the bills confirm that Powers worked on a personal guaranty that Edwards signed. Neither the notation nor the work description, however, proves that an attorney-client relationship existed or that Powers performed work on Edwards' behalf. The billing statements are equally consistent with the conclusion that no personal attorney-client relationship existed.
 
 
 14
 In the final analysis, like Keplinger, Edwards' argument is supported only by "an individual's mere subjective belief that he is represented individually ...." 776 F.2d at 701. Given the countervailing evidence, such subjective belief alone is insufficient. We agree with the district court that no attorney-client privilege existed. Thus, the district court did not abuse its discretion in ordering compliance with the grand jury subpoena issued to Powers.
 
 B. Intervention
 
 15
 Edwards also contends that the district court erred in denying his motion to intervene in the grand jury proceeding. However, we need not decide that issue in this case. Regardless of the trial court's formal ruling on the motion to intervene at the conclusion of the proceeding, Edwards, in fact, was fully heard on the merits to the same extent as if he had been permitted to intervene.
 
 
 16
 Assuming it was error to deny the motion to intervene, see, e.g., In re Grand Jury Proceedings re Freeman, 708 F.2d 1571, 1574-75 (11th Cir. 1983) (once issue of attorney-client privilege surfaces, target has right to intervene), the error was harmless. Because we have fully considered Edwards' claim on the merits and have held that no attorney-client relationship existed, Edwards suffered no prejudice from the denial of the motion to intervene. Id. at 1575.
 
 
 17
 For the foregoing reasons, the district court's orders denying Edwards' motion to quash and compelling Powers to comply with the grand jury subpoena are AFFIRMED.
 
 
 
 *
 Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. Rule 36-3